**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/7/14

| | |
|---|---|
| ELINA GOLOVKO, MARCELO PETRONE, ALENA KARAKOVA, MADELINE DINDA, STEPHANIE MASIELLO, JENNIFER BOBE, HILARY KAUFMANN, COLLEEN KOLTICK, HEATHER KARPOFF, and LAUREN VALLETUTTI, individually and on behalf of all others similarly situated, | **Index No. 12-cv-9307(AKH)(FM)** |

Plaintiffs,

- against –

230FA LLC d/b/a/ 230 FIFTH AVENUE,

Defendant.

---

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL CERTIFICATION OF THE SETTLEMENT CLASSES, FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND FINAL APPROVAL OF THE FLSA SETTLEMENT AND GRANTING PLAINTIFF'S UNOPPOSED MOTIONS FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; AND APPROVAL OF REPRESENTATIVE SERVICE AWARD**

This written order expands on the Court's July 24, 2014 oral order granting

Plaintiffs' unopposed motion. As noted at the July 24, 2014 hearing, this Court granted the

Plaintiffs' unopposed motion subject to the condition that the *Cy Pres* fund be governed by the

conditions set forth in this Court's March 10, 2014 order Order Granting Plaintiffs' Unopposed

Motion for Preliminary Approval of Class Settlement, Provisional Certification of the Settlement

Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval Of Proposed Notice

Of Settlement. *See* ¶ 89 *infra*.

### Background

On December 20, 2012, Plaintiffs Elina Golovko, Marcelo Petrone, Alena

Karakova, Madeline Dinda, Stephanie Masiello, Jennifer Bobe, Hilary Kaufmann, Colleen

Koltick, Heather Karpoff, and Lauren Valletutti (collectively, "Named Plaintiffs") commenced

this Litigation on behalf of the putative class they represent against Defendant 230FA LLC

("Defendant") alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C. §§ 201

*et seq.* (the "FLSA"), and various state wage and hour laws, including the New York Labor Law ("NYLL"), by retaining portions of the employees' tip pool, and/or failing to pay the minimum hourly wage and overtime compensation.

Plaintiff sought, *inter alia*, certification of this Litigation as a "collective action" under the FLSA and as a "class action" under Federal Rule of Civil Procedure ("FRCP") 23 and state law, and sought unpaid overtime wages, prejudgment interest, liquidated damages, and attorneys' fees and costs. In response to the Complaint, Defendant filed an Answer disputing the material allegations in the Litigation and denying any liability in the class and collective action. (ECF No. 10, 17)

After active litigation of the lawsuit, including: (1) Defendant's provision of thousands of pages of documents; (2) thorough investigation by Class Counsel and Plaintiff; (3) a mediation session with Ruth D. Raisfeld, an experienced wage and hour employment mediator; and (4) extensive negotiations, the Parties entered into the Stipulation of Class Action Settlement, between Plaintiff and Defendant, dated December 20, 2013 (Decl. of Robert Ottinger, Jul. 17, 2014 "Ottinger Decl.") ¶¶ 25-27; Ex. D.) The Settlement Amount described in the Settlement Agreement covers payments to Class Members, a service award, attorneys' fees and costs, and the cost of the Settlement Administrator. (Ottinger Decl. ¶¶ 39-49.)

### Litigation and Mediation Efforts

On or around February 2013, the Parties conferred regarding the Litigation. During the pendency of the Litigation, it became apparent that Defendant entered into a previous class action resolution in a matter entitled *Sand v. Greenberg*, 08 Civ. 7840 (PAC). In the *Sand* action, the issues raised, and ultimately resolved and waived by Court order, included many of the claims raised in this Litigation and encompassed a release effective up to November 16, 2009. (Ottinger Decl. ¶ 20.)

In anticipation of mediation, Plaintiffs and 230FA exchanged targeted discovery aimed at allowing the Parties to perform damages calculations. Plaintiffs furthermore provided 230 FA with detailed damages calculations.

On August 15, 2013, Plaintiffs and 230FA attended a full-day mediation session with Ruth D. Raisfeld, an experienced wage and hour employment mediator. Although a settlement was not reached at the mediation, thereafter, the Parties continued to discuss the details and various aspects of the Settlement. Over the course of many weeks, Plaintiffs' detailed investigation and analysis reviewed damages for a class consisting of about 651 individuals who worked as hourly employees who received tip compensation and who worked as servers, cocktail servers, bartenders, barbacks, and bussers at 230 Fifth, the lounge located at 230 Fifth Avenue, New York, New York between November 16, 2009 and December 20, 2013. On or about September 10, 2013, the Parties reached a settlement in principle with the objective of (a) compensating servers, cocktail servers, bartenders, barbacks, and bussers who worked from November 16, 2009 through September 1, 2012 for all bottle fees collected and (b) compensating all servers, cocktail servers, bartenders, barbacks, and bussers who worked throughout the Class Period (November 16, 2009 through December 20, 2013) for their varied claims for unpaid minimum wage and/or overtime claims.

On December 20, 2013, the Parties entered into the Stipulation of Class Action Settlement (the "Settlement Agreement"). At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. The Settlement Agreement resolves all claims alleged in the Complaint (ECF No. 1) and the Amended Complaint (ECF No. 14), provides meaningful benefits to Class Members, and satisfies all of the "fairness" criteria for final approval.

3

## Motion for Preliminary Approval Granted

On December 20, 2013, the Plaintiff moved for preliminary approval of the class settlement, scheduling a fairness hearing, and related relief, including, appointment of Plaintiff's counsel as class counsel and approval of the proposed Class Notices ("Motion for Preliminary Approval"). Defendant did not oppose the relief sought by Plaintiff. (Ottinger Decl. ¶ 33.)  On March 10, 2014, the Court granted the Plaintiff's Motion for Preliminary Approval (based on the terms of the Settlement Agreement), including approval of the Class Notice ("Preliminary Approval Order").

## Settlement Administrator and Class Notice

The parties retained Angeion Group as the Settlement Claims Administrator. After estimating the Class Members to number approximately 651 individuals, the Parties ultimately agreed and Plaintiffs provided the Claims Administrator with information for 635 Class Members to whom the Class Notices were transmitted on April 9, 2014. (Ottinger Decl. ¶ 40.)  Pursuant to the terms of the Settlement Agreement, the Claims Administrator took reasonable steps to find the correct address for any Class Member whose Class Notice was returned and attempted re-mailing for returned Class Notices. (Ottinger Decl. ¶ 36.)

Class Members responded positively to the Class Notice.  Out of a putative Rule 23 Class of 635 individuals, just one Class Members submitted Opt-Out Request letters to become Non-Participating Class Members. (Ottinger Decl. ¶ 37.) None of the Class Members submitted a valid objection to the Settlement. (Ottinger Decl. ¶ 38.)

The Court held a fairness hearing on July 24, 2014.  Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, Motion for Service Award, the supporting declarations, and the complete record in this matter, for good cause shown,

## NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:
## APPROVAL OF THE SETTLEMENT AGREEMENT, CERTIFICATION OF CLASS

## AND FLSA SETTLEMENT

1.      The Court hereby grants the Motion for Final Approval, approves the settlement memorialized in the Settlement Agreement as fair, reasonable, and adequate, and certifies the collective and class action and respective classes as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23 and the FLSA.

2.      Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).  To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine whether a settlement is substantively fair, Courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

### *Certification of the Rule 23 Class*

3.      When faced with a proposed class settlement, courts first examine whether the settlement class is certifiable. *Denney v. Deutsche Bank AG*, 443 F.3d 252, 270 (2d Cir. 2006). Through the Preliminary Approval Order, the Court conditionally certified the putative Rule 23 and FLSA Classes totaling 635 Class Members. The Court now grants final certification because all of the certification requirements are met and there is no opposition to certification for settlement purposes since no valid objections have been submitted and because Defendant does not oppose this Motion. For the purpose of effectuating the Settlement, Plaintiffs seek final certification of a 635-member Rule 23 Class.

4.      Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

5

common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that:

> [Q]uestions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at (b)(3).

### *Numerosity*

5.      Plaintiffs easily satisfy the numerosity requirement because there are 635 Class Members. (Ottinger Decl. ¶ 35.) The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### *Commonality*

6.      The Court finds that the proposed settlement class, the Rule 23 Class, also satisfies the commonality requirement.

7.      This case involves numerous common issues. Named Plaintiffs and Class Members all bring the identical claims that Defendant retained portions of the Class Members' tips, specifically those pertaining to the collection of bottle fees by Defendant. Other common issues include, but are not limited to, (a) whether Defendant employed or jointly employed the Named Plaintiffs and the Class Members within the meaning of the NYLL and FLSA; (b) whether Defendant's practices, policies, programs, procedures, protocols, and plans allowed for the payment of overtime to the Named Plaintiffs and the Class Members; (c) whether Defendant

failed to pay appropriate minimum and overtime wages to Class Members in violation of the NYLL; and (d) whether Defendant acted willfully or in reckless disregard of the statute.

### *Typicality*

8.     Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted).

9.     Named Plaintiffs were employed by Defendant during the Class Period as "tipped" wait staff employees whose principal complaint is that they failed to receive all tips collected in the form of bottle fees due to Defendant's practice of retaining earned tips and/or service gratuities from bottle fees charged to customers. (Ottinger Decl. Ex. B at ¶ 27.) Named Plaintiffs may also have varied claims for failure to pay minimum and overtime wages. (*See* Ottinger Decl. ¶ 28.) Accordingly, Named Plaintiffs claim the same injury as Class Members.

10.     Because Named Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement.

### *Adequacy of the Named Plaintiffs*

11.     Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

12.     Regarding the adequacy of the Named Plaintiffs, there is no evidence or indicia that they have interests that are antagonistic or at odds with Class Members. Therefore Plaintiffs satisfy this requirement.

13.     Plaintiffs' counsel also meet the adequacy requirement of Rule 23(a)(4) because

7

their "experience, knowledge of this area of law, work invested in identifying the potential claims in this action, and ability to commit sufficient resources to representing the class also satisfy the Rule 23(g) requirements for appointment as class counsel." *Spicer*, 269 F.R.D. at 337-38 (citations omitted). Among other things, Plaintiffs' counsel has previously been appointed as Class Counsel in a number of cases. (Ottinger Decl. ¶ 72.)

14.     Accordingly, reference to Paragraphs 69 to 83 of the Ottinger Declaration supports the conclusion that counsel is qualified and the requirements of 23(a)(4) are met.

### *Certification is Proper Under Rule 23(b)(3)*

15.     Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### *Common Questions Predominate*

16.     To establish predominance, Named Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007).

17.     Here, Class Members' common factual allegations and common legal theory – that Defendant improperly failed to distribute the bottle fee tip pool to Class Members – predominates over any factual or legal variations among class members. Significantly, Plaintiffs damages in connection with unpaid tips, as well as unpaid minimum and overtime wage claims, can all be calculated using a common method of gauging damages based on hours worked during the Class Period and weighted for those employed during the time the bottle fees were collected. Therefore a clear predominating question exists so as to warrant class certification.

### *A Class Action is a Superior Mechanism*

18.     The second part of the Rule 23(b)(3) analysis is a relative comparison examining

whether "the class action device [is] superior to other methods available for a fair and efficient

adjudication of the controversy." *Green v. Wolf Corp.*, 406 F. 2d 291, 301 (2d Cir. 1968).

19.     Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry

into the superiority of a class action, including: the class members' interests in individually

controlling the prosecution or defense of separate actions; whether individual class members

wish to bring, or have already brought, individual actions; and the desirability of concentrating

the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[1]

20.     Here, Named Plaintiffs and the Class Members have limited financial resources

with which to prosecute individual actions. Named Plaintiffs are unaware of any other pending

lawsuits filed by class members arising from the same allegations. Regarding the forum,

concentrating the litigation in this Court is desirable because all of the allegedly wrongful

conduct occurred within the jurisdiction of this Court and will conserve judicial resources. A

class action pursuant to Rule 23 is the most suitable mechanism to fairly, adequately, and

efficiently resolve Plaintiffs' and Class Members' claims.

### *The Proposed Settlement is Fair, Reasonable, and Adequate and Should Be Approved in All Respects*

21.     Rule 23(e) requires court approval of a class action settlement to ensure that it is

procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).  To

determine whether a settlement is procedurally fair, courts examine the negotiating process

---

[1]     Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial").

leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.

2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

22.     To determine whether a settlement is substantively fair, courts determine whether

the settlement's terms are fair, reasonable, and adequate according to the factors set forth in *City*

*of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

23.     Courts examine procedural and substantive fairness in light of the "strong judicial

policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal

citation omitted).

24.     Here, procedural and substantive considerations support approving the proposed

settlement.

### *The Proposed Settlement Is Procedurally Fair*

25.     The proposed settlement is procedurally fair because it was reached through

arm's-length negotiations after experienced counsel had conducted substantial discovery,

allowing them to evaluate the merits of Plaintiffs' claims.

26.     Here, the settlements were reached after Plaintiff conducted a thorough

investigation, evaluated the claims, and negotiated extensively with Defendant. Plaintiff

obtained pay and time records and interviewed potential Class Members, all of which enabled

Plaintiff to perform accurate damages calculations. (Ottinger Decl. ¶¶ 14-18.) Plaintiff was able

to extrapolate to perform damages calculations based on the information secured, including

extensive records Defendant provided. (Ottinger Decl. ¶¶ 21.) From these sources, Plaintiff's

counsel was able to evaluate the strengths and weaknesses of Plaintiff's claims. On August 15,

2013, Plaintiffs and 230FA attended a full-day mediation session with Ruth D. Raisfeld, an

experienced wage and hour employment mediator, and less than one month thereafter, the

Parties reached a settlement in principle. (Ottinger Decl. ¶ 28.) The Parties continued to discuss

the details and various aspects of the Settlement and subsequently entered into the Stipulation of

10

Class Action Settlement and the Settlement Agreement (Ottinger Decl. ¶ 29). At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. (Ottinger Decl. ¶ 30.)

27.     The arm's-length negotiations in which counsel for the Parties engaged create a presumption that the settlement they achieved meets the requirements of due process.

### *The Proposed Settlement Is Substantially Fair*

28.     In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 587655, at *5 (E.D.N.Y. 2012), satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

### *Litigation Through Trial Would be Complex and Costly (Factor 1)*

29.     By reaching a favorable settlement prior to dispositive motions or trial, the Parties avoid the significant expense and delay of additional discovery, litigation, and potential appeal and instead ensure a prompt recovery for the Class Members. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### *The Reaction of the Class (Factor 2)*

30.     Here the Class Notices informed Class Members of how to exclude themselves

from the Settlement and object to the Settlement. Of the 635 Class Notices that Angeion has sent

out to Class Members, only 52 were undeliverable. From the 583 Class Notices that were

successfully sent to Class Members, Angeion received only one Opt-out statement in connection

with the settlement. Angeion has received no Objection statements or any other correspondence

from Class Members. This response demonstrates overwhelmingly strong support for the

settlement.  Therefore this factor favors final approval.

### *Discovery Is Sufficiently Advanced (Factor 3)*

31.     The Parties' discovery here is sufficiently advanced to indicate that counsel

appreciated the merits of this case before negotiating the settlement: counsel conducted

interviews conducted, reviewed thousands of pages of documents, and completed a damages

analysis.  (Ottinger Decl. ¶¶ 14-18.)  Therefore, this factor also weighs in favor of final approval.

### *Plaintiffs Would Face Risks if the Case Proceeded (Factors 4 & 5)*

32.     A trial on the merits would involve significant risks to Plaintiffs because of the

fact-intensive nature of proving liability under applicable federal and state wage and hour laws,

including the FLSA, and in light of the defenses available to Defendant, which would pose

substantial risk as to both liability and damages.

33.     While Named Plaintiffs believe that they could ultimately establish Defendant's

liability on these claims, Named Plaintiffs wish to settle and remove the uncertainties inherent in

any trial or appeal. This factor therefore also weighs in favor of final approval.

### *Establishing and Maintaining a Class Would Not Be Simple (Factor 6)*

34.     The risk of obtaining class certification and maintaining it through trial is also

present. Parties anticipate that such a determination would be reached only after further

discovery and intense, exhaustive briefing by both Parties. If the case proceeded to trial,

Defendant would oppose the class certification. In opposing class certification, Defendant would likely argue that a number and variety of individualized questions exist such as the retaliation claims that are being dismissed from this case without prejudice, as well as Class Members' varied claims for minimum wage and overtime compensation. Defendant would further argue that a class action is not a superior method to resolve Plaintiffs' claims, and that a class trial would not be manageable. Settlement eliminates the risk, expense, and delay that permeate such processes. Therefore this factor favors final approval.

### *Defendant's Ability to Withstand a Greater Judgment (Factor 7)*

35.      Since there is no basis for believing Defendant would be unable to withstand a greater judgment, this is a neutral factor for settlement and does not prevent the court from approving a settlement.

### *The Settlement Funds are Substantial, Even in Light of the Best Possible Recovery and the Risks of Litigation (Factors 8 & 9)*

36.      This case presents significant risks that militate toward compromise. Defendant agreed to settle this case for a substantial amount, $450,000. Of this sum, $201,700 is directly attributable to collected bottle fees to be distributed to Class Members as unpaid tips, and the balance will address Class Members' varying claims for unpaid minimum wage and overtime wages. This settlement amount represents a good value given the attendant risks of litigation, and, since the recovery provides Class Members with a substantial recovery for a variety of claims, the recovery might not be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. (Ottinger Decl. ¶ 54.)

37.      Here, each Class Member will receive a payment based upon his or her hours worked through December 20, 2013 which is then calculated based on the procedure detailed above in Summary of the Settlement Terms, Section IV. Since the Net Settlement Fund fully compensates for bottle fees collected during the Class Period, it is anticipated that this settlement will make the Class Members whole and provide them with an additional recovery for their

varied minimum wage and overtime claims. (Ottinger Decl. ¶ 54.)  Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the Gross Settlement Amount is reasonable.

38.     In sum, all of the *Grinnell* factors weigh in favor of issuing final approval of the settlements.  Because the settlements are "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (citation omitted), the Court grants final approval.

### *Approval of the FLSA Settlements Is Appropriate Under Federal Law*

39.     The Court approves the settlement of the FLSA claims.  Plaintiff brought the FLSA claims as a collective action.  In a collective action, employees must affirmatively opt in to the litigation unlike in a Rule 23 class action, which includes all employees unless they opt out. *Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]").

40.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. See *Khait*, 2010 WL 2025106 at *7; *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.  *Id.* at 1354; *Clark*, 2010 WL 1948198, at *7.

41.     In this case, the Settlement Agreement was the result of vigorously contested litigation and extensive arm's-length negotiation. (Ottinger Decl. ¶ 30.) Recognizing the uncertain legal and factual issues involved, the parties engaged in a mediation session and lengthy negotiations before ultimately reaching the settlement pending before the Court. (Ottinger Decl. ¶¶ 14-24.) Throughout the litigation and negotiations, Plaintiff and

14

Defendant were both represented by counsel. Accordingly, the Settlement Agreement will resolve a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, and will therefore be appropriate for final approval.

## CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF THE SETTLEMENT PAYMENT

42.      Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of the Class.

43.      The Stipulation of Class Action Settlement, between Plaintiff and Defendant, dated December 20, 2013 (Ottinger Decl. Ex. D (the "Settlement Agreement"), which was preliminarily approved by the Court, allows Class Counsel to seek attorneys' fees in the sum of "sum of 25% of the Gross Settlement Amount, or $112,500.00, and costs in an amount not to exceed $25,000." (Ottinger Decl. ¶ Ex. D, at ¶ 24.) In addition, the Class Notice sent to all Class Members stated the following:

> Class Counsel will ask the Court to approve payment of 25% of the settlement fund for attorneys' fees. These fees would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. The cost of the settlement administrator will also come from the settlement fund. The Court may award less than these amounts. 230 Fifth has agreed not to oppose these fees.

(Ottinger Decl. Ex. H ¶ 6 and Ex. 1 attached thereto.)

44.      The retainer letter Named Plaintiffs signed in this case provides that, "[i]f this matter is resolved on a class-wide basis, the Firm will receive the greater of (a) 33% of the net proceeds, whether through settlement, final judgment or arbitrator's award in this matter or (b) the full amount of any Court-awarded or arbitrator-awarded attorneys' fees." (Ottinger Decl. Ex. K.)

45.      Class Counsel requests attorneys' fees of $112,500. This sum is twenty-five (25) percent of $450,000, which is the Settlement Amount. The sum requested by Plaintiff's counsel is reasonable and well within the range approved by courts in similar cases. Class Counsel's

actual expenses in the Lawsuit were $5,034.57, and Class Counsel seeks approval of this sum as well. (Ottinger Decl. ¶ 47; Ex. J.)

46.     For the reasons set forth below, Court grants the requested award of attorneys' fees and expenses.

### The Percentage Method is the Preferred Method in the Second Circuit for Awarding Attorneys' Fees in a Common-Fund Case.

47.     In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *8 (Jan. 20, 2010).

### The Goldberger Factors Support Class Counsel's Fee Application

48.     Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: 1) the time and labor expended by counsel, 2) the magnitude and complexities of the litigation, 3) the risk of litigation, 4) the quality of representation, 5) the requested fee in relation to the settlement, and 6) public policy considerations. 209 F.3d at 50 (quotations omitted). For the reasons set forth below, the Court finds that all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

#### Class Counsel's Time and Labor

49.     Over the course of the past year-plus, Class Counsel expended substantial time and effort to achieve the $450,000.00 Settlement Amount on behalf of the Class. Class Counsel expended significant time and effort investigating and researching the merits of Class Members' claims. After substantial discovery and other active litigation, including (1) Defendant's provision of thousands of pages of documents, (2) thorough investigation by Class Counsel and Named Plaintiffs, (3) a mediation sessions with Ruth D. Raisfeld, and (4) extensive negotiations, the Parties entered into the proposed Settlement Agreement. (Ottinger Decl. ¶¶ 14-30.)

50.     Starting in February 2013, the Parties addressed the possibility of settlement, including mediation. To that end, Defendant provided extensive documentation to Plaintiffs concerning hours worked, bottle fees collected, regular tips collected, and regular tip distribution. In anticipation of mediation, Plaintiffs and 230FA exchanged targeted discovery to allow the Parties to prepare damages calculations. Plaintiffs furthermore provided 230FA with detailed damages calculations. (Ottinger Decl. ¶¶ 14-18.)

51.     On August 15, 2013, Plaintiffs and 230FA attended a full-day mediation session with Ruth D. Raisfeld, an experienced wage and hour employment mediator. Although a settlement was not reached at the August 15 mediation, thereafter, the Parties continued to discuss the details and various aspects of the Settlement. Over the course of many weeks, Plaintiffs' detailed investigation and analysis reviewed damages for a class consisting of about 651 individuals who worked as hourly employees who received tip compensation and who worked as servers, cocktail servers, bartenders, barbacks, and bussers at 230 Fifth, the lounge located at 230 Fifth Avenue, New York, New York between November 16, 2009 and December 20, 2013. As a result of these negotiations, the parties agreed upon a class composed of 635 members. (Ottinger Decl. ¶¶ 19-27.)

52.     On or about September 10, 2013, the Parties reached a settlement in principle with the objective of (a) compensating servers, cocktail servers, bartenders, barbacks, and bussers who worked from November 16, 2009 through September 1, 2012 for all bottle fees collected and (b) compensating all servers, cocktail servers, bartenders, barbacks, and bussers who worked throughout the Class Period (November 16, 2009 through December 20, 2013) for their varied claims for unpaid minimum wage and/or overtime claims. (Ottinger Decl. ¶ 28.)

53.     On December 20, 2013, the Parties entered into the Settlement Agreement. The same day as the Settlement Agreement was signed, Plaintiffs moved for preliminary approval of the class settlement, scheduling of a fairness hearing, and related relief, including appointment of

17

Plaintiffs' counsel as class counsel and approval of the proposed Class Notices (ECF Nos. 32-34) ("Motion for Preliminary Approval"). Defendant did not oppose the relief sought by Plaintiffs. On March 10, 2014, the Court granted Plaintiffs' Motion for Preliminary Approval (based on the terms of the Settlement Agreement), including approval of the Class Notice (ECF No. 32) ("Preliminary Approval Order"). (Ottinger Decl. ¶¶ 29-38.)

54.     In performing these and other tasks, Class Counsel expended more than 529 hours of attorney, paralegal, and support staff time, for an aggregate lodestar of $226,483.42, approximately double the $112,500 Class Counsel seeks in attorneys' fees. (Ottinger Decl. ¶¶ 63-64.) These hours are reasonable for a case such as this one, and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. Class Counsel used a small team of attorneys and staff at any one time in order to minimize duplication of efforts and maximize billing judgment. Class Counsel made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to perform the work effectively.  (Ottinger Decl. ¶¶ 61-63.)

55.     Moreover, the requested fee is not based solely on time and effort already expended, rather, it is also meant to compensate Class Counsel for time that Class Counsel will be required to spend administering the settlement in the future. In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. Class Counsel and staff have expended substantial time responding to questions about the case and will continue to do so as the settlement administration continues.  (Ottinger Decl. ¶ 68.)

### *Magnitude and Complexity of the Litigation*

56.     The magnitude of this Litigation, involving 635 Rule 23 Class Members, combined with the complexity of the factual and legal questions involved, further support the reasonableness of the requested fee award.  Under the second *Goldberger* factor, the size and

18

difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50.

57.     This case involved claims for violation of both FLSA wage and hour laws as well as New York state wage and hour laws. In addition, this case involved 635 putative Class Members. A thorough investigation and interviews with the Named Plaintiffs revealed that most, but not all, of the servers, cocktail servers, bartenders, barbacks, or bussers earned sufficient tips to assure that they earned minimum wage, prompting further investigation in order to distinguish those who would be eligible as Class Members in this action. Although the mediation session held on August 15, 2013 did not result in a settlement, discussions between parties continued until they entered into the Settlement Agreement on December 20, 2013. The lengthy settlement negotiation process required Class Counsel to examine thousands of documents produced by the Defendant in order to determine adequate settlement terms for the large number of potential Class Members involved. Additional complication arose due to the necessity of distinguishing the different job positions held by the putative Class Members and allocating the Bottle Fee Fund amongst those Members based on their positions with the Defendant. Given the complexity and size of this action, the second *Goldberger* factor supports the award of attorneys' fees.

### Risk of Litigation

58.     Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. (Ottinger Decl. ¶ 84.) Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the

19

very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful. (Ottinger Decl. ¶ 86.)

59.     To date, Class Counsel have worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.  (Ottinger Decl. ¶ 86.) Accordingly, the risk of litigation weighs in favor of Class Counsel's request for attorneys' fees.

### *Quality of Representation*

60.     Plaintiff's calculation of total damages based on pre-settlement investigation supports the conclusion Class Members will receive substantial compensation for their unpaid overtime based on Defendant's conduct with respect to the Bottle Fee policy. Relative to this estimate, Plaintiffs believe that the $450,000.00 Settlement Amount represents an excellent recovery for the class in light of the risk that Plaintiff would not prevail on all claims since the monetary settlement contemplates substantial compensation for Class Members' alleged unpaid overtime and tips. (Ottinger Decl. ¶ 54.)

61.     The $450,000.00 Settlement Amount represents an even greater value since it not only fully compensates Class Members and represents what may be the best result possible, it also gives Class Members a more immediate payment without the attendant risks of litigation, including trial and potential appeal.

62.     Moreover, the quality of the recovery is further underscored by the strong support for the settlement: out of 635 total Class Members to whom Class Notice was sent, just one Class Member seeks to opt out from the Litigation, and none have objected. (Ottinger Decl. ¶¶ 37-38.)

63.     Class Counsel's experience also weighs in favor of approving their requested fees.  The Firm has substantial experience prosecuting large-scale wage and hour actions such as this litigation.   In addition to actively litigating several wage and hour class actions, The Ottinger Firm has been appointed as class counsel and/or secured FLSA Collective Action

certification in *Keller v. Axa Equitable Life Insurance Company*, 12-CV-4565; *Bardouille v. Goldman Sachs & Co.*, 10-CV-4285; *Gomez v. Gravitas Technology, Inc.*, 10-cv-6412 (DE-30) (S.D.N.Y. May 8, 2012); *Orgill v. Ingersoll-Rand* Company, 101142/2010; *Mas v. Cumulus Media Partners*, No. 10-CV-1396; *De Oca v. Bloomberg L.P.*, 13-CV-76 (ALC)(SN); *Landin v. UBS*, 10-CV-711; *Martinez v. Forest Laboratories*, 10-CV-06032; *Butt v. Megabus Northeast, LLC*, 11-CV-3993; *Gomez v. Gravitas Technology, Inc.*, 10-CV-6412; *Fouathia v. Gurwitch Products*, 10-CV-6411; *McKenzie v. Schulte Roth & Zabel, LLP,* 11-CV-3991; and *Dorn v. Eddington Security*, 08-CV-10271 (co-counsel with Outten & Golden LLP) (Ottinger Decl. ¶ 72.) In a number of these cases, courts awarded The Ottinger Firm's fees based on hourly rates similar to the rates sought in this Litigation.  (Ottinger Decl. ¶ 71.)

64.     Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. *See Velez*, 2007 WL 7232783, at *8 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

### *Fee in Relation to the Settlement*

65.     Class Counsel seeks a 25% fee.  Given that Class Counsel seeks a percentage that is less than that of a typical class action within this circuit, this factor also weighs in favor of awarding attorneys' fees.

### *Public Policy Considerations*

66.     Public policy considerations weigh in favor of granting Class Counsel's requested fees.    The Fair Labor Standards Act and state wage and hour laws are remedial statutes designed to protect workers. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for

21

a fair day's work"). Fair compensation for attorneys who take on such litigation furthers the remedial purpose of the statutes.

67.     In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee. The award of the requested fees will encourage private attorneys to investigate and prosecute similar claims, and will encourage employers to review their own pay practices in order to ensure that they are in full compliance with the requirements of the FLSA and NYLL.

### The Lodestar Cross Check Further Supports an Award to Class Counsel of Twenty-five Percent of the Settlement Fund

68.     Following *Goldberger*, courts usually apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.* As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *See Hicks v. Morgan Stanley, et. al.*, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005). Courts then consider whether a multiplier is warranted based on "other less objective factors, such as the 'risk of litigation', the complexity of the issues, and the skill of the attorneys." *Savoie*, 166 F.3d at 460; *see also Goldberger*, 209 F.3d at 47.

69.     Class Counsel spent more than 529 hours litigating and settling this matter. The time spent by Class Counsel is described in the accompanying RO Decl. and Class Counsel's contemporaneous time records attached thereto. (Ottinger Decl. ¶ 63; Ex. I.) The hours worked by Class Counsel result in a lodestar of $226,483.42, approximately double the $112,500 in attorneys' fees requested by class counsel. This demonstrates the reasonableness of their request.

*Class Counsel are Entitled to Reimbursement of Expenses Under the Settlement Agreement.*

70.     Class Counsel incurred litigation expenses of $5,034.57.  The Settlement Agreement provides that Class Counsel are entitled to reimbursement of their actual litigation costs and expenses to be paid from the Settlement Amount.  (Ottinger Decl. Ex. D at ¶ 24.) "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).  Here, Class Counsel's unreimbursed expenses were incidental and necessary to the representation of the Class. They include costs for postage, technical support, court fees, legal research, and other expenses.  (Ottinger Decl. ¶ 61.)  The Class Notice recognizes that payment of Class Counsel's costs would also be sought from the Settlement Amount. Therefore this Court awards Class Counsel reimbursement of their litigation costs as part of their requested fees.

## SERVICE AWARDS ARE APPROPRIATE IN THIS CASE

71.     In light of their significant efforts resulting in a substantial settlement on behalf of the Class, the Court grants Named Plaintiffs and Opt-In Plaintiffs Michaeline Sexton and Lucy Oyola (collectively "Plaintiffs") the requested service awards.

72.     "Incentive awards are not uncommon in class action cases and are within the discretion of the court."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). In examining the reasonableness of service awards, courts consider: (1) the time and effort expended by the plaintiffs during the litigation or "in bringing to bear added value (e.g. factual expertise)[;]" (2) the ultimate recovery; and (3) any burdens sustained by the plaintiffs, including personal risk. *See id.*

### *Named Plaintiffs Expended Considerable Time and Effort*

73.     Plaintiffs merit service awards based on the significant time and effort they expended – and continue to expend – in connection with the lawsuit.  Plaintiffs provided Class Counsel with valuable factual information during the litigation.

74.     In the early stages of the lawsuit, Plaintiffs assisted Class Counsel's investigation of the claims and defenses by supplying first-hand factual knowledge of Defendant's compensation practices. Plaintiffs provided detailed factual information about the hours they worked, as well as information regarding Defendant's knowledge of the overtime hours they worked, how and by whom bottle fees were deducted, and various complaints they made to Defendant about these deductions. They also spoke to and/or attempted to speak to then-current and former employees to confirm information regarding Defendant's policies.  (Ottinger Decl. ¶¶ 90-93.)

75.     As the litigation proceeded, Plaintiffs communicated with Class Counsel by supplying additional information regarding their overtime hours and compensation along with Defendant's knowledge thereof.  The information Plaintiffs provided also helped Class Counsel prepare for the mediation that took place on May 6, 2013. Moreover, Named Plaintiffs attended the August 15, 2013 and provided assistance with information relevant to the mediation. (Ottinger Decl. ¶¶ 94-96.)

### *The Ultimate Recovery Supports Payment of Service Awards*

76.     The service awards requested here is reasonable in light of the very substantial and successful $450,000.00 Settlement Amount recovered on behalf of the Class.

77.     In this case, the total proposed Service Awards represent only approximately 2.22% of the total $450,000.00 Settlement Payment.  The proposed Service Awards are therefore reasonable in light of the recovery achieved and the payments approved by other courts in wage and hour cases.

### *Plaintiffs Faced a Risk of Retaliation*

78.     In assessing the reasonableness of service awards, courts consider the risks plaintiffs assumed in serving their fellow class members.

79.     In this case, named Plaintiffs actually asserted claims of retaliation, which are not subject to the instant settlement and associated releases. (*See* Ottinger Decl. ¶ 57.) Even in the absence of a record of actual retaliation, however, plaintiffs merit recognition for assuming the risk of retaliation for the sake of absent class members.

80.     Here, Plaintiffs incurred the risk that later employers would take adverse action against them if it became known that they were named plaintiffs in a lawsuit against their former employer—a risk intensified by the scope of the Litigation and visibility of the Defendant.

81.     Based on each of the three foregoing factors, Named Plaintiffs each merit a $1,000 service award.

<u>Conclusion</u>

82.     Final Approval of the Settlement Agreement and all of its terms, which the Court finds to be fair, reasonable, and adequate, shall be thirty (30) days after the date of this Final Approval Order (the "Effective Date") if no party appeals this Final Approval Order.  If a party appeals this Final Approval Order, the Effective Date of the settlements shall be the day after all appeals are finally resolved (Ottinger Decl. Ex. D ¶ 1.10).

83.     Within twenty four (24) hours of when the Final Settlement Share Calculations are determined, the Settlement Administrator shall forward the Final Settlement Share Calculations for all Class Members to Counsel for Defendant.

84.     Defendant shall send the Settlement Administrator the Gross Settlement Amount within thirty (30) days after the Effective Date. The Settlement Administrator shall transmit the Settlement Checks within fourteen (14) days after the Effective Date.

85.     The Settlement Administrator shall also provide payment of Class Counsel's

attorneys' fees in the sum of $112,500.00, plus expenses in the sum of $5,034.57, to Class

Counsel within fourteen (14) days of the receiving the Gross Settlement Amount from

Defendant. Payment of the Service Awards, in an amount of $1,000.00 to each of the Named

Plaintiffs and to Opt-In Plaintiffs Michaeline Sexton and Lucy Oyola, shall also be made by the

Settlement Administrator within fourteen (14) days of the receiving the Gross Settlement

Amount from Defendant.

86.    As the March 10, 2014 order provided:  "Any unclaimed funds will be re-

distributed to members of the Class until exhausted or the remaining funds render re-distribution

impractical. Thereafter, the Settlement Claims Administrator will return any remaining funds to

Defendant. Since there is no reversion, Defendant will (within fourteen (14) days thereafter)

create a *cy pres* fund and donate the unclaimed settlement funds to the Steven A. Greenberg

Memorial Trust to Memorial Sloan-Kettering Cancer Center for lymphoma cancer research to be

supervised by Dr. Craig Moscowitz."[2]

87.    The Settlement Claims Administrator shall mail all applicable IRS Forms (and

any other similar forms as required by any other government agency) to Class Members and

Class Counsel in a timely manner in accordance with applicable law.

88.    This action shall be dismissed on the merits with prejudice and all Class Members

who have not opted out shall be bound by the releases in the Settlement Agreement and are

permanently barred from prosecuting against Defendant any individual or class claims covered

by such releases.

89.    Named Plaintiffs shall likewise be bound by the general release in the Settlement

Agreement except that Named Plaintiffs' claims of retaliation in violation of the Fair Labor

---

[2]    To the extent that any party contends that any provisions of the settlement agreement do
not provide for the re-distribution of money to members of the Class, this Order supercedes
those provisions.

Standards Act and the New York Labor Laws shall not be subject to this settlement, and Named Plaintiffs agree to dismiss these claims without prejudice to their right to seek separate relief on those grounds.

90.     The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement.  The parties shall abide by all terms of the Settlement Agreement and this Order.

SO ORDERED.

Dated:     August 2014
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge